IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00462-KLM

CHERRY CREEK MORTGAGE, LLC

      Plaintiff and Counter Defendant,

v.

THOMAS R. JARBOE,

      Defendant and Counter Plaintiff.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Counter Defendant Cherry Creek Mortgage LLC's ("Cherry Creek") **Motion to Dismiss** [#102][1] (the "Motion").  Counter Plaintiff Thomas R. Jarboe ("Jarboe") filed a Response [#103] in opposition to the Motion [#102], and Cherry Creek filed a Reply [#106].  The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises.  Based on the following, the Motion [#102] is **GRANTED in part and DENIED in part**.[2]

---

[1] "[#102]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  This convention is used throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c), on consent of the parties.  *See* [#27, #29].

## I.  Background

The following allegations of the Answer and Counterclaim [#72] are accepted as true for the purpose of determining the merits of the Motion [#102].  *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011) (stating that the allegations drawn from the complaint must be taken as true when considering the merits of a motion to dismiss).  At all relevant times, Mr. Jarboe resided in California and performed substantially all of his work in California.  *Answer and Counterclaim* [#72] at 9.  Cherry Creek is a corporation organized under the laws of the State of Colorado with its principal place of business in Colorado.  *Id.*  In November 2015, Cherry Creek offered Mr. Jarboe employment as a regional manager for branches in the Los Angeles area.  *Id.* at 12.  Mr. Jarboe began working for Cherry Creek in February 2016.  *Id.*

Prior to beginning his employment with Cherry Creek, Mr. Jarboe was employed by Primary Residential Mortgage, Inc. ("PRMI").  *Id.* at 10.  Mr. Jarboe managed approximately twenty-five branches for PRMI as Division President.  *Id.*  During his employment with PRMI, Mr. Jarboe had purchased an office building in Diamond Bar, California (the "Diamond Bar Building") and purchased equipment for use in this building including furniture, computers, printers, phones, and phone systems.  *Id.* at 11.  PRMI leased the Diamond Bar Building and the equipment from Mr. Jarboe through a limited liability company (the "LLC") which Mr. Jarboe set up with his wife.  *Id.*  PRMI paid market-rate rent on a monthly basis to Mr. Jarboe's LLC.  *Id.*

In addition to owning the office building and the equipment within, Mr. Jarboe ran his mortgage business using both a local and an "800" telephone number which he had used before his employment with both PRMI and Cherry Creek.  *Id.* at 10.  To maintain

continuity within his business and with his contacts in the mortgage origination industry, Mr. Jarboe continued using these telephone numbers while working for other mortgage origination companies such as PRMI and Cherry Creek. *Id.*

Cherry Creek offered Mr. Jarboe a position in November 2015, and he began to work for Cherry Creek in February 2016. *Id.* On acceptance of his employment offer, twenty-two of the twenty-five PRMI branches which Mr. Jarboe previously managed became branches under Cherry Creek. *Id.* at 12. Mr. Jarboe continued to manage these twenty-two branches while employed by Cherry Creek. *Id.*

Pursuant to his employment contract, Mr. Jarboe was to be paid a base salary plus a guaranteed manager override on a monthly basis. *Id.* The contract also contained provisions which made Mr. Jarboe liable to Cherry Creek for any deficit attributable to the branches Mr. Jarboe managed. *Id.* Further, the contract contained "commitments by Cherry Creek and Mr. Jarboe that each would comply with applicable federal and state laws and regulations." *Id.*

In addition, Cherry Creek assumed PRMI's obligations on the lease of the Diamond Bar Building, owned by Mr. Jarboe, which meant that Cherry Creek was required to pay market rate rent for the office space which Mr. Jarboe owned. *Id.* at 24. The parties also agreed that Cherry Creek would make monthly payments for the equipment which Mr. Jarboe owned in the branches that Cherry Creek had acquired from PRMI. *Id.* These payments were in addition to Mr. Jarboe's salary and override. *Id.*

On June 18, 2017, Mr. Jarboe gave notice to Cherry Creek of his resignation. *Id.* at 14. His final day was scheduled to be on June 30, 2017, but Cherry Creek required Mr. Jarboe to work through approximately July 19, 2017. *Id.* Mr. Jarboe alleges that,

-3-

when his employment ended, Cherry Creek did not pay Mr. Jarboe wages that were due to him. *Id.* These wages include three months of his guaranteed manager override and one month of base salary. *Id.* Additionally, Mr. Jarboe alleges that Cherry Creek failed to pay him any amounts for unpaid, accrued paid time off. *Id.*

Cherry Creek initiated this lawsuit on January 19, 2018, in an attempt to recover losses which occurred when the branches under the control of Mr. Jarboe accumulated "net losses." *Compl.* [#3] at 6. Cherry Creek asserts that Mr. Jarboe breached his employment agreement by not compensating Cherry Creek for these losses as provided by his employment contract. *Id.* at 3. Cherry Creek brings claims for breach of contract, breach of fiduciary duty, and unjust enrichment. *Id.* at 3-5.

In response, Mr. Jarboe has asserted seven counterclaims against Cherry Creek: (1) failure to pay wages; (2) payment of business expenses; (3) declaratory judgment; (4) breach of contract; (5) breach of the implied warranty of good faith and fair dealing; (6) conversion; and (7) unfair competition. *Answer and Counterclaim* [#72] at 17-25. In the present Motion [#102], Cherry Creek has moved to dismiss all of Mr. Jarboe's counterclaims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether

the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

## III.  Analysis

Apart from Mr. Jarboe's counterclaim for declaratory judgment, which is brought under federal law, Mr. Jarboe has asserted most of his claims under California law.  *See Answer and Counterclaim* [#72] at 17 (asserting a claim under Cal. Lab. Code §§ 203 & 218.5), 19 (asserting a claim under Cal. Lab. Code § 2802), 21 (asserting breach of contract due to violations of California labor laws), 24 (asserting a claim under Cal. Bus. & Prof. Code § 17200).  Due to a choice-of-law clause in the employment contract, Cherry Creek asserts that Colorado law governs the relationship between the parties, and therefore many of Mr. Jarboe's counterclaims must be dismissed under Fed. R. Civ. P. 12(b)(6).  *Motion* [#102] at 3-5 (discussing arguments relating to the choice of law clause); *Non-Producing Branch Manager Agreement* [#65-1] at 12 (regarding choice of law clause in Mr. Jarboe's employment contract).[3]  Therefore, the Court first addresses choice of law for each counterclaim other than Counterclaim 3 for declaratory judgment, which is asserted under federal law, before addressing other arguments made by Cherry Creek in its Motion [#102].

### A.    Choice of Law

A federal court sitting in diversity must apply the choice of law rules of the state in which it sits.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

---

[3] Although the choice-of-law clause in the employment contract is not directly mentioned in Mr. Jarboe's Answer and Counterclaim [#72], the contract is mentioned and is clearly central to many of Mr. Jarboe's counterclaims. *Answer and Counterclaim* [#72] at 12.  On a Rule 12(b)(6) motion to dismiss, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).  Thus, the Court may consider the contract, including the choice of law clause therein.

Because subject matter jurisdiction in this case is based on diversity of citizenship, Colorado choice of law principles apply. *Answer and Counterclaim* [#72] at 8 ¶ 1.

The Non-Producing Branch Manager Agreement [#65-1] signed by the parties includes a choice-of-law clause which states: "Governing Law.  The interpretation and construction of this Agreement and all matters relating hereto, shall be governed by the internal laws of the State of Colorado, without regard to principles of conflicts or choice of law."[4]  *See* [#65-1] at 12.  The plain language of this choice-of-law clause is broad, pertaining not only to the agreement itself but to "all matters relating hereto."  *Id.*; *see also Specialized Grading Enters., Inc. v. Goodland Constr., Inc.*, 181 P.3d 352, 355 (Colo. App. 2007) (stating that interpretation of a written contract is a question of law) (citing *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313-14 (Colo. 1984)).

Although applying Utah law, the Court finds *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 491 (D. Utah 2017), to be analytically persuasive here in the absence of any known Colorado legal authority to the contrary.  There, the defendants urged the court to apply California law and the plaintiffs argued in favor of application of Utah law.  *Roberts*, 318 F.R.D. at 492.  The lease agreement and operating agreement at issue in *Roberts* both included identical provisions stating: "This Agreement shall be interpreted under the laws of the United States and the State of Utah, without regard to the choice-of-law rules of such State or any other jurisdiction."  *Id.*  The court there stated:

> [C]hoice of law provisions in these contracts do not contain broadening language such as "arising out of" or "relating to" the subject matter of the agreements.  In this respect, the plain language of the agreements suggests

---

[4] No party argues that any choice-of-law provision in any other contract with some relationship to this lawsuit, such as the lease for the space in the Diamond Bar Building, governs the choice-of-law issues pertaining to Mr. Jarboe's counterclaims.

that the choice of law provisions apply only to issues of contractual interpretation. Indeed, the narrow language of these provisions can be contrasted with language elsewhere in the agreements imposing a time limitation, but extending to claims relating to or arising out of the agreements. The difference between the language of the two provisions suggests the parties did not contract to apply Utah law to any claims relating to or arising under either agreement. Because the Agreements do not reflect the parties' intent to apply Utah law to legal issues beyond contract interpretation, the court concludes the agreements are not determinative . . . .

*Id.* (internal footnotes omitted).

Here, because the parties' choice-of-law provision *does* include broadening language ("The interpretation and construction of this Agreement *and all matters relating hereto*, shall be governed by the internal laws of the State of Colorado . . . ." *See* [#65-1] at 12 (emphasis added)), the Court reaches the opposite conclusion. The Court finds that the plain language of the Non-Producing Branch Manager Agreement [#65-1] means that it broadly concerns Mr. Jarboe's employment relationship with Cherry Creek, and, therefore, any state law counterclaims "relating" to that relationship must be adjudicated under Colorado law. Thus, the Court first examines the six counterclaims to determine which ones broadly "relate to" Mr. Jarboe's employment contract.

Counterclaim 1 is a statutory claim asserting that Cherry Creek has failed to pay wages as required by Mr. Jarboe's employment contract. *Answer and Counterclaim* [#72] at 12 ("Pursuant to the Contract, Cherry Creek agreed to pay Mr. Jarboe compensation comprised of a base salary . . . plus a Guaranteed Manager Override amount . . . on a monthly basis."). The Court finds that this counterclaim relates to the parties' employment agreement.

Counterclaim 2 asserts a claim under California Labor Code § 2802, which states in relevant part: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ."  Cal. Lab. Code § 2802(a).  Because this statute governs the relationship between an employer and its employee, the Court finds that this counterclaim relates to the parties' employment agreement.

Counterclaim 4 asserts breach of the employment contract.  *Id.* at 21-22. Counterclaim 5 asserts breach of the employment contract's implied covenant of good faith and fair dealing.  *Id.* at 22.  The Court finds that these two counterclaims quite obviously relate to the parties' employment agreement.

Counterclaim 6 asserts a claim for conversion.  *Id.* at 23.  Following Mr. Jarboe's resignation, he asserts that Cherry Creek has allegedly exercised wrongful dominion over equipment which he owns and a phone number which he has used throughout his career. *Id.* at 23-24; *see also id.* at 13 ("After becoming employed by Cherry Creek, Mr. Jarboe transferred the Telephone Numbers for his use with Cherry Creek.") ("Before Mr. Jarboe accepted his employment with Cherry Creek, Mr. Jarboe and Cherry Creek discussed . . . use of Mr. Jarboe's equipment that were in use at all of the branches that came with Mr. Jarboe to Cherry Creek."); *Non-Producing Branch Manager Agreement* [#19-1] at 38 (defining Indirect Expenses as including telephone lines and office equipment); *id.* at 40 (allowing Cherry Creek to retain a portion of Branch Manager's net income for payment of Direct or Indirect Expenses).  Because Cherry Creek came into possession of these items by and through the parties' employment relationship, the Court finds that Counterclaim 6 relates to the parties' employment agreement.

Counterclaim 7 is a statutory claim asserting that Cherry Creek engaged in unfair competition. *Id.* at 24. Particularly, Mr. Jarboe asserts that "Cherry Creek's conduct constitutes, at a minimum, 'unfair' business acts or practices under Cal. Bus. & Prof. Code § 17200 by requiring California employees as a condition of their employment to agree that (a) Colorado law applies, (b) any lawsuit between Cherry Creek and California employees [must] take place in a Colorado forum and (c) employees bear the burden of paying for business expenses of Cherry Creek branches." *Id.* By asserting this counterclaim, Mr. Jarboe attempts to adjudicate issues concerning his employment relationship with Cherry Creek. The Court finds that this counterclaim also relates to the parties' employment agreement.

Thus, all six of these counterclaims clearly "relate to" Mr. Jarboe's employment relationship with Cherry Creek and therefore must be construed in accordance with the parties' agreement. *See Stroh Ranch Dev., LLC v. Cherry Creek S. Metro. Dist. No. 2*, 935 F. Supp. 2d 1052, 1059 (D. Colo. 2013) ("As a starting point, courts examine the contractual terms and attempt to determine the parties intent therein." (internal quotation omitted)). The parties' choice of law provision states that "[t]he interpretation and construction of this Agreement and all matters relating hereto, shall be governed by the internal laws of the State of Colorado, *without regard to principles of conflicts or choice of law.*" *See* [#65-1] at 12 (emphasis added). The Tenth Circuit Court of Appeals has indicated that "unambiguous . . . choice of law provisions in signed, bargained-for contracts" are to be mandatorily enforced. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1223 (10th Cir. 2000). However, even assuming that the choice-of-law provision is not enforceable, as Plaintiff implies, the Court would ultimately reach the

same conclusion in its own choice-of-law analysis here, agreeing that Colorado law must be applied to the six state law claims asserted in this lawsuit.

Colorado choice of law principles are consistent with the Restatement (Second) of Conflict of Laws § 187 (1971). *See Target Corp.*, 351 P.3d at 497 (citing *Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 113 (Colo. App. 1994)). Section 187(2) provides, in relevant part:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless . . . (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Therefore, Colorado courts enforce contractual choice-of-law provisions unless a party can prove the elements of "materially greater interest" and "fundamental policy" of a state whose law would apply in the absence of the contractual provision. *Haggard v. Spine*, No. 09-cv-00721-CMA-KMT, 2009 WL 1655030, at *3 (D. Colo. June 12, 2009) ("Colorado courts will enforce contractual choice of law provisions unless a party can prove the twin requirements of § 187.").

First, the Court must determine which state's law would apply absent the choice of law provision. *Jacquat v. Hub Int'l Ins. Servs., Inc.*, No. 09-cv-02539-WYD-MJW, 2010 WL 9568710, at *3 (D. Colo. June 15, 2010). To determine which state's law ought to apply in absence of a choice-of-law clause, Colorado utilizes the "most significant relationship" test outlined in Restatement (Second) of Conflict of Laws § 188(2). *Id.* (citing *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372-73 (Colo. 1979)). The "most significant relationship" test takes into account the following five

elements when determining the law applicable to an issue: (1) the place of the contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.  *Wood Bros Homes*, 601 P.2d at 1372 n.4.

Here, at the time of the events bringing rise to this litigation, Mr. Jarboe was a citizen of California, the actions giving rise to the litigation occurred in California, and Mr. Jarboe was employed to run Cherry Creek's California branches.  *Answer and Counterclaim* [#72] at 9, 12.  The Answer and Counterclaim [#72] is silent as to the place or places of negotiation and contracting.  Thus, absent the choice-of-law provision in the employment contract, the Court finds that application of the Restatement factors dictates that California law would govern this dispute.  *See Great Am. Opportunites, Inc. v. Kent*, 352 F. Supp. 3d. 1126, 1130-33 (D. Colo. 2018) (holding that Colorado law would apply absent a choice-of-law provision for Tennessee when an employee was a Colorado citizen who was employed for sales in Colorado).  Thus, the Court must decide (1) whether California has a materially greater interest than Colorado in determination of the several contractual counterclaims brought by Mr. Jarboe and, if so, (2) whether the application of Colorado law would be contrary to a fundamental public policy of California. *See Haggard*, 2009 WL 1655030, at *3; Restatement (Second) Conflict of Laws § 187(2).

First, Mr. Jarboe must show that California has a "materially greater interest" in the determination of his several counterclaims.  Restatement (Second) Conflict of Laws § 187(2).  Mr. Jarboe was a California resident who was employed by Cherry Creek to manage California branches which it had just acquired.  *Answer and Counterclaim* [#72]

at 9, 12.  Colorado's connection to this lawsuit is the fact that Cherry Creek is a Colorado corporation and that the parties' contract at issue requires application of Colorado law. *Answer and Counterclaim* [#72] at 9.  In a previous order, the Court held that California's interest in its own laws does not outweigh Colorado's interest in the enforcement of voluntary agreements.  *Order* [#59] at 10.  Here, the parties consented to an employment agreement being construed and enforced in accordance with the laws of the State of Colorado.  *Decl. Regarding Restricted Document* [#65] at 12.  "When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. . . .  In all but the most unusual cases . . . , 'the interest of justice' is served by holding the parties to their bargain."  *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 66 (2013).  Accordingly, the Court cannot find that California has a materially greater interest in the determination of these counterclaims than Colorado.

Given that the "material greater interest" requirement of Restatement (Second) §187 is not satisfied, the Court holds that the choice-of-law provision in Mr. Jarboe's employment contract is controlling for Mr. Jarboe's six counterclaims.  Thus, Counterclaims 1, 2, 4, 5, 6, and 7 must be analyzed under Colorado law.

## B.    Motion to Dismiss

The Court next addresses Cherry Creek's arguments as to why Mr. Jarboe's counterclaims should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

### 1.    Counterclaim 3: Declaratory Judgment

The Court has discretion under 28 U.S.C. § 2201 to decide whether to hear a declaratory judgment action. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995) (holding that the statute "vest[s] district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp"); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) ("The Supreme Court has long made clear that the Declaratory Judgment Act gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.").

Mr. Jarboe seeks declaratory judgment on four topics, asking the Court to declare: (1) that "Cherry Creek must indemnify or pay its employees including Mr. Jarboe for all necessary expenditures and losses incurred in the discharge of their duties in furtherance of Cherry Creek's business," (2) "that California law applies to Cherry Creek's employment relationship with its California employees," (3) "that any disputes between Cherry Creek and its California employees are properly litigated in California forums," and (4) "that any provisions in employment contracts between Cherry Creek and its California employees, including Mr. Jarboe, which contradict California law or HUD or FHA regulations are unenforceable." *Answer and Counterclaim* [#72] at 21.

For the most part, Cherry Creek's arguments here are vague and conclusory with inadequate supporting case law. *Motion* [#102] at 14-16; *Reply* [#106] at 8-11. Nevertheless, with respect to Mr. Jarboe's second and third requests for relief, the Court finds, in its discretion, that they should be dismissed as moot. *See Wilton*, 515 U.S. at 289; *Mhoon*, 31 F.3d at 982. Both of these issues have already been decided by the Court through motions practice earlier in the case, and there appears to be no purpose

-14-

for retaining these issues in the case.  *See Wilton*, 515 U.S. at 289.  The issue of whether California law applies has been determined in this Order in Section III.A. above as a necessary prerequisite to adjudicating the merits of several of Mr. Jarboe's counterclaims, despite the fact that neither party directly asked for resolution of this issue in the context of Mr. Jarboe's counterclaim for declaratory judgment.  The issue of the proper forum in which to hear this dispute has been resolved not only by the Eastern District of California, but also twice by this Court, including on a motion for reconsideration.  *Order* [#59] (denying Mr. Jarboe's motion to transfer venue); *Order* [#127] (denying motion to reconsider the denial of Mr. Jarboe's motion for transfer of venue); *Order* [#31] in 19-cv-00291-KLM (order by District Judge in the Eastern District of California transferring that case to the District of Colorado, which was then consolidated with the present action and which forms the basis of Mr. Jarboe's counterclaims in this action).  Thus, the Court **grants** the Motion [#102] to the extent that these two parts of Mr. Jarboe's counterclaim for declaratory judgment are **dismissed as moot**.

Regarding the first part of the declaratory judgment counterclaim, i.e., Mr. Jarboe's request for a declaration that "Cherry Creek must indemnify or pay its employees including Mr. Jarboe for all necessary expenditures and losses incurred in the discharge of their duties in furtherance of Cherry Creek's business," the Court notes that, even liberally construing the briefs, Cherry Creek does not discuss this aspect of the counterclaim.  *See Motion* [#102] at 14-16; *Reply* [#106] at 8-10.  In the absence of any discernible argument here, the Court **denies** the Motion [#102] as to this first part of Mr. Jarboe's counterclaim.

Regarding the fourth part of this counterclaim, i.e., Mr. Jarboe's request for a declaration "that any provisions in employment contracts between Cherry Creek and its California employees, including Mr. Jarboe, which contradict California law or HUD or FHA regulations are unenforceable," Cherry Creek argues that Mr. Jarboe's request is improper because the parties are involved in another proceeding pending before the Court concerning the False Claims Act. *Motion* [#102] at 14-15; (citing *United States ex rel. Thomas R. Jarboe*, No. 1:19-cv-01529-CMA-KLM (D. Colo.) (the "FCA Action")). Cherry Creek argues that the FCA Action involves the same issues for which Mr. Jarboe seeks declaratory relief here. *Motion* [#102] at 14-15.

The Court "should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding."[5] *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989). However, Cherry Creek has not directed the Court's attention to any specific filing(s) in the FCA Action which show that the two cases seek to litigate the same issues. Moreover, as a general matter, the District Judge in the FCA case previously decided that the two cases do not involve the same issues of fact and law, at least insofar as necessary to adjudicate a motion to consolidate this action with the FCA action. *FCA Action* [#153] at 1 ("[T]he instant action and the Consolidated Labor Action involve substantially different claims and parties."). The main similarity between the two cases is the fact that both bring claims (or counterclaims) concerning purported violations of HUD and FHA laws, but Mr. Jarboe's

---

[5] Cherry Creek cites five factors enunciated by the Tenth Circuit Court of Appeals in deciding this type of issue, *see Motion* [#102] at 14, but the *Mhoon* factors are only utilized when the other proceeding is pending in *state* court, which is not the situation here. *See, e.g.*, *Mhoon*, 31 F.3d at 983.

request for declaratory judgment does not require the court to make a declaration to this effect.  *Compare Answer and Counterclaim* [#72] at 20, *with FCA Action* [#1] at 7. Accordingly, any argument by Cherry Creek that the declaratory judgment counterclaim is improper due to the existence of the FCA Action is, based on Cherry Creek's limited argument, without merit.

Thus, the Motion [#102] is **denied** as to this fourth part of Mr. Jarboe's counterclaim.

### 2.     Counterclaims 1, 2, and 7: California Statutory Law

Mr. Jarboe asserts three counterclaims asserted under California's statutory code: (1) Counterclaim 1, Failure to Pay Wages, Cal. Labor Code §§ 204, 218.5; (2) Counterclaim 2, Payment of Business Expenses, Cal. Labor Code § 2802; and (3) Counterclaim 7, Unfair Competition, Cal. Bus. & Prof. Code § 17200.  The Court has already held in Section III.A. above that the parties' employment agreement mandates application of Colorado law.  Thus, the issue here is whether Mr. Jarboe's counterclaims asserted under California law must be dismissed.

In *Lester v. Gene Express, Inc.*, No. 09-cv-02648-REB-KLM, 2010 WL 3941417, at *1 (D. Colo. Sept. 27, 2010), the dispute concerned the plaintiff-employee's relationship with the defendant-employer, as largely governed by their employment agreement.  The choice-of-law provision in their agreement mandated application of Colorado law to any dispute.  *Lester*, 2010 WL 3941417, at *3.  The Court found that the choice-of-law provision was enforceable and therefore neither New Jersey nor Pennsylvania law applied to the case.  *Id.*  Thus, the plaintiff's claims asserted under the laws of those states were deemed "not applicable to this case."  *Id.*  Other courts have held similarly

under similar circumstances. *See, e.g.*, *Allred v. Innova Emergency Med. Assoc., P.C.*, No. 18-cv-03097-DDD-NRN, 2020 WL 3259249, at *6 (D. Colo. June 16, 2020) (entering summary judgment on California labor code causes of action where the related employment agreement had an enforceable Colorado choice-of-law provision); *see also Sensoria, LLC v. Kaweske*, No. 20-cv-00942-MEH, 2021 WL 103020, at *9 (D. Colo. Jan. 12, 2021) (citing *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 224, n.28 (3d Cir. 2006) (finding that a loan agreement entered pursuant to the federal Securities Act and which was to be governed by and interpreted under New York law barred claims brought pursuant to Pennsylvania's Securities Act and common law)).

Here, the Court finds that Plaintiff's three statutory counterclaims asserted under California law must be dismissed. All three counterclaims concern matters "relating to" the parties' employment agreement, as discussed in Section III.A. above. *Answer and Counterclaims* [#72] at 12 ("Pursuant to the Contract, Cherry Creek agreed to pay Mr. Jarboe compensation comprised of a base salary . . . plus a Guaranteed Manager Override amount . . . on a monthly basis."), 19 ("Cherry Creek's [failure to pay] effectively required Mr. Jarboe to pay for Cherry Creek's necessary business expenses out of his own pocket."), 24 (Cherry Creek's conduct constitutes, at a minimum, 'unfair' business acts or practices under Section 17200 by requiring California employees as a condition of their employment to agree . . . [to the provisions of the employment agreement]."). Because "all matters relating" to the employment agreement are governed by Colorado law, the Court finds that California law is inapplicable to the adjudication of these counterclaims. *See Lester*, 2010 WL 3941417, at *3; *Allred*, 2020 WL 3259249, at *6.

Accordingly, the Motion [#102] is **granted** to the extent that Counterclaims 1, 2, and 7 are **dismissed with prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (stating that a dismissal with prejudice is appropriate where granting leave to amend the complaint would be futile).

### 3.    Counterclaim 4: Breach of Contract

Mr. Jarboe has asserted that Cherry Creek breached his employment contract by violating Department of Housing and Urban Development regulations and California labor laws. *Answer and Counterclaim* [#72] at 15-16, 21.  Cherry Creek argues that Mr. Jarboe has provided insufficient allegations as to this counterclaim because "[n]owhere does Mr. Jarboe allege that his contract with Cherry Creek required it to comply with these regulations." *Motion* [#102] at 13.

However, as Mr. Jarboe points out in his response, "the agreements themselves include Cherry Creek's express representations that the 'transactions' in those agreements will not violate any federal, state or local statute, law, or regulation." *Response* [#103] at 19.  Indeed, a similar assertion was made in Mr. Jarboe's Answer and Counterclaim [#72].  *Answer and Counterclaims* [#72] at 12 ("The Contract also contained commitments by Cherry Creek and Mr. Jarboe that each would comply with applicable federal and state laws and regulations.").  Thus, to the extent that this counterclaim asserts breach of contract based on violation of HUD regulations, the Court finds that, based on Cherry Creek's limited argument, the Motion [#102] should be **denied**.

The Court comes to a difference conclusion, however, to the extent that this counterclaim asserts breach of contract based on violation of California labor laws.  As

the Court has already determined, the employment agreement between the parties is governed by Colorado law due to the contract's choice-of-law provision.  Following that determination, any argument made by Mr. Jarboe that Cherry Creek breached the parties' employment agreement by violating California labor law must fail because the "applicable" state law is Colorado's.  *See Answer and Counterclaim* [#72] at 21.  Thus, to the extent this counterclaim asserts breach of contract based on violation of California labor laws, the Court finds that the Motion [#102] should be **granted**.

Accordingly, the Motion [#102] is **denied in part and granted in part** with respect to Mr. Jarboe's counterclaim for breach of contract, and Counterclaim 4 is **dismissed with prejudice** to the extent Mr. Jarboe asserts breach occurring as a result of Cherry Creek's alleged violation of California labor laws.  *See Reynoldson*, 907 F.2d at 127.

### 4.    Counterclaim 5: Implied Covenant of Good Faith & Fair Dealing

In Colorado, courts have "declined to recognize the existence of an implied covenant of good faith and fair dealing in the context of otherwise at-will employment contracts."  *Decker v. Browning-Ferris Indus. of Colo., Inc.*, 931 P.2d 436, 442 (Colo. 1997); *Gloston v. ITT Fed. Servs. Corp.*, No. 06-cv-02168-PSF-BNB, 2007 WL 1830486, at *2 (D. Colo. June 21, 2007) ("[S]everal Colorado appellate courts and federal courts applying Colorado law have held that there is no cause of action under Colorado law for breach of the implied covenant of good faith and fair dealing in the employment context.").  This is because causes of action in the employment context are based on breaches within the respective employment contract, and not based on obligations existing outside of them.  *Id.* (stating that a breach of the implied covenant "constitutes a breach of an

obligation created by the contract . . . rather than breach of an obligation arising independently from the contract").

Mr. Jarboe has conceded in his Response [#103] that "the weight of authorities does not recognize a claim for breach of the implied covenant [of good faith and fair dealing], as a separate claim of relief in employment situations."  *Response* [#103] at 18. Further, in his Answer and Counterclaim [#72], Mr. Jarboe does not assert any argument under Colorado law, which, as the Court has determined, governs the employment agreement between the two parties.  Thus, Mr. Jarboe has failed to state a claim with regard to his cause of action for breach of the implied warranty of good faith and fair dealing.

Accordingly, the Motion [#22] is **granted** to the extent that Counterclaim 5 is **dismissed with prejudice**.  *See Reynoldson*, 907 F.2d at 127.

### 5.   Counterclaim 6: Conversion

Mr. Jarboe asserts that Cherry Creek has "interfered with and deprived Mr. Jarboe of his right to exercise control over [his] equipment and the '800' Telephone Number." *Answer and Counterclaim* [#72] at 24.  Due to this interference, Mr. Jarboe argues that Cherry Creek has committed the tort of conversion.  *Id.*  Cherry Creek argues that Mr. Jarboe has not pleaded sufficient facts to state a claim for conversion.  *Motion* [#102] at 12.

"Conversion is any distinct, unauthorized act of dominion of ownership exercised by one person over personal property belonging to another."  *Byron v. York Inv. Co.*, 296 P.2d 742, 745 (Colo. 1956).  Under Colorado common law, to state a claim for conversion Mr. Jarboe must allege that: "(i) [Cherry Creek] exercised dominion or control over

property; (ii) that property belonged to [Mr. Jarboe]; (iii) [Cherry Creek's] exercise of control was unauthorized; (iv) [Mr. Jarboe] demanded return of the property; and (v) [Cherry Creek] refused to return it." *DTC Energy Grp., Inc. v. Hirschfield*, 420 F. Supp. 3d 1163, 1181 (D. Colo. 2019) (quoting *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1081 (D. Colo. 2012)).  Importantly, conversion "does not require that a wrongdoer act with the specific intent to permanently deprive the owner of his property." *Itin v. Ungar*, 17 P.3d 129, 136 n.10 (Colo. 2000).  In other words, "[c]onversion is a species of strict liability in which questions of good faith, lack of knowledge, and motive are ordinarily immaterial." *Scott v. Scott*, 428 P.3d 626, 634 (Colo. Ct. App. 2018).

Here, Cherry Creek argues that Mr. Jarboe has failed to make sufficient allegations to support a claim for conversion because (1) he failed to identify what personal property Cherry Creek has taken control over, and (2) he failed to adequately allege that he had actual ownership of the "800" telephone number.  *Motion* [#102] at 12.  The Court disagrees on both accounts.

First, Cherry Creek argues that Mr. Jarboe has failed to identify what personal property Cherry Creek has taken control over.  *Id.*  However, in his Answer and Counterclaim [#72], Mr. Jarboe alleges that he had purchased equipment from his prior employer which is used in several Cherry Creek locations and that Cherry Creek continues to use that equipment without paying for it.  *Answer and Counterclaim* [#72] at 13 ("Mr. Jarboe purchased and owned most of the equipment used in the PRMI branches. . . . Mr. Jarboe and Cherry Creek discussed that Cherry Creek was required to make monthly payments for use of Mr. Jarboe's equipment . . . that came with Mr. Jarboe to

-22-

Cherry Creek.").  He further specifies that "[t]his equipment included furniture, computers, printers, phones, phone systems and other property that are required for the business operations of these mortgage originating branches."  *Id.* at 11.  Taking this as true, Mr. Jarboe has adequately alleged the specific personal property he is referencing in his conversion counterclaim for purposes of a Rule 12(b)(6) motion, and any further specification is a subject for discovery.

Second, Cherry Creek argues that Mr. Jarboe failed to adequately allege that the "800" telephone number "belonged" to him.  *Motion* [#102] at 11-12 (citing *DTC Energy Grp., Inc.*, 420 F. Supp. 3d at 1181).  Mr. Jarboe alleges:

> Before Mr. Jarboe was employed by PRMI, Cherry Creek and other companies, Mr. Jarboe operated his own mortgage origination business using a specific local (909.869.6588) and "800" number (800.259.0090) for that business (the "Telephone Numbers").  Mr. Jarboe continued to use these Telephone Numbers when he subsequently became employed by other companies, like PRMI and Cherry Creek.  Mr. Jarboe's use of the Telephone Numbers assisted Mr. Jarboe in maintaining continuity in his business and his contacts in the mortgage origination industry.

*Answer and Counterclaim* [#72] at 10.  Mr. Jarboe further alleges that, "[a]fter becoming employed by Cherry Creek, Mr. Jarboe transferred the Telephone Numbers for his use with Cherry Creek.  Mr. Jarboe believes that the continuity in his contact information assisted him to maintain his business contacts and benefited his business.  PRMI did not resist Mr. Jarboe's continued use of the Telephone Numbers."  *Id.* at 13.  Mr. Jarboe asserts that, following the end of his employment with Cherry Creek, "[a]fter months of heated discussions and negotiations, Cherry Creek returned to Mr. Jarboe his local telephone number but has refused to return the '800' number to Jarboe.  Upon information and belief, Mr. Jarboe has suffered a loss of business from Cherry Creek's refusal to turn

over the Telephone Numbers at the time Mr. Jarboe left Cherry Creek." *Id.* at 15.  He

asserts that "[t]he Telephone Numbers and the right to use such numbers are valuable in

that people in the mortgage industry and potential clients know Mr. Jarboe from his long

time use of such numbers.  Cherry Creek exercised and continues to exercise wrongful

dominion over Mr. Jarboe's '800' Telephone Number."  *Id.* at 23.

Neither party cites legal authority regarding whether an 800-number can "belong"

to a person and, therefore, whether a conversion claim regarding such a number can

survive a Rule 12(b)(6) motion to dismiss.  The Court has found only a single case

discussing whether a telephone number may serve as the basis for a conversion claim

under Colorado law.  *See T2 Techs., Inc. v. Windstream Commc'ns, Inc.*, No. 14-cv-

03151-MSK-KLM, 2016 WL 9735763, at *8 (D. Colo. Sept. 26, 2016).  There, the court

found that such a claim is permissible.  The defendant argued that the plaintiff could not

"establish that it took possession of personal property which [the plaintiff] owned or had

a right to possess—essentially, [the defendant] argues that, as a matter of law, the 390

telephone numbers that were improperly ported were not personal property owned by

[the plaintiff]."  *Id.*  In its analysis, the court stated:

> Despite the best efforts of the parties and the Court, no Colorado or binding
> authority on this question has been unearthed.  It is generally accepted that
> neither carriers and resellers of telecommunications services nor
> subscribers "own" the telephone numbers that they service or use.  But, with
> regard to subscribers, courts have recognized that there may be a "right to
> use a given number."   A subscriber's " right to use" a given telephone
> number has been recognized by several courts as a right of control or
> interest in the telephone number sufficient to support a claim for conversion.
> [Community Voice Line, L.L.C. v. Great Lakes Communication Corp., 18 F.
> Supp. 3d 966, 980-81 (N.D. Iowa 2014)] is particularly instructive because
> it applied Iowa law, which defines conversion similarly to Colorado.  [That
> case] recognized that it is not necessary that a party own property to assert

a conversion claim, only that a party have a possessory right or right of control over the property.

The Court does not understand [the defendant] to argue that telephone numbers cannot be property, only that [the plaintiff] does not own them. That may be the case, but both parties agree that the subscribers to whom the telephone numbers are assigned have either a possessory interest or the right to control the telephone number. . . .  [T]he Court will assume telephone numbers may constitute the subject property of a conversion claim. [The plaintiff] reaches the same conclusion by focusing on several decisions in which courts declined to dismiss claims for conversion based upon the recognition that the right to use a telephone number, although intangible, can be of immense value. . . .  It is undisputed that T2 was a subscriber for several of the improperly ported numbers.  Its use and control of such numbers was interrupted, and thus as a subscriber, [the plaintiff] can bring a claim for conversion.  These would include . . . [the plaintiff's] executives' office numbers and . . . help desk.

*Id.* at *8-9 (internal citations omitted).

Here, taking Mr. Jarboe's allegations as true, he was a subscriber to the 800-number, and he therefore had a right of control or interest in the number.  He has also adequately alleged, for purposes of a Rule 12(b)(6) motion, that Cherry Creek continues to exercise unauthorized dominion or control over the phone number despite Mr. Jarboe's demand for its return.  *See DTC Energy Grp., Inc.*, 420 F. Supp. 3d at 1181.  At this stage of the case, and in the absence of any robust argument to the contrary by Cherry Creek, the Court finds that Mr. Jarboe has stated a claim for conversion in his pleading.

Accordingly, the Motion [#102] is **denied** with respect to Counterclaim 6.

## IV.  Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#102] is **GRANTED in part and DENIED in part**.

The Motion [#102] is **granted** with respect to Counterclaims 1, 2, and 7, and these claims are **dismissed with prejudice**.

The Motion [#102] is **granted in part and denied in part** with respect to Counterclaim 3 for declaratory judgment.  The Motion is **granted** with respect to the second and third requests for relief, which are **dismissed with prejudice**. The Motion is otherwise **denied** as to this counterclaim.

The Motion [#102] is **granted in part and denied in part** with respect to Counterclaim 4 for breach of contract.  The Motion is **granted** with respect to any breach of contract for violations of California labor law, and this portion of the counterclaim is **dismissed with prejudice**.  The Motion is otherwise **denied** as to this counterclaim.

The Motion [#102] is **granted** with respect to Counterclaim 5 for breach of the implied covenant of good faith and fair dealing, and Counterclaim 5 is **dismissed with prejudice**.

The Motion [#102] is **denied** with respect to Counterclaim 6 for conversion.[6]

Dated:  August 20, 2021

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

[6]  In his Response [#103], Mr. Jarboe asks for leave to amend several claims should the court deem that they should be dismissed.  *Reply* [#103] at 12, 18, 23.  However, pursuant to D.C.COLO.LCivR 7.1(d), "[a] motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document."  Thus, this request is denied.