IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00462-KLM

CHERRY CREEK MORTGAGE, LLC

    Plaintiff and Counter Defendant,

v.

THOMAS R. JARBOE,

    Defendant and Counter Plaintiff.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant/Counter Plaintiff Thomas R. Jarboe's ("Jarboe") **Motion for Reconsideration of Order Granting in Part Motion to Dismiss Counterclaims [ECF 159] [#188]** (the "Motion"). Plaintiff/Counter Defendant Cherry Creek Mortgage Company, LLC ("Cherry Creek") filed a Response [#189] in opposition to the Motion [#188], and Mr. Jarboe filed a Reply [#190]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. Based on the following, the Motion [#188] is **DENIED**.[1]

---

[1] This case has been referred to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c), on consent of the parties. *See Consent* [#27]; *Order* [#29].

## I. Background[2]

Mr. Jarboe is an individual who, at all relevant times, resided in California and performed substantially all of his work in California. *Am. Answer and Counterclaims* [#72] at 9. He has "worked in the mortgage industry since 1986," assisting people in obtaining mortgage loans and working for non-bank mortgage originating companies, and was employed by Cherry Creek. *Id.* at 9-10, 12. Cherry Creek is a corporation organized under the laws of the State of Colorado with its principal place of business in Colorado. *Id.*

Prior to beginning his employment with Cherry Creek, Mr. Jarboe was employed by Primary Residential Mortgage, Inc. ("PRMI"). *Id.* at 10. Mr. Jarboe managed approximately twenty-five branches for PRMI as Division President. *Id.* During his employment with PRMI, Mr. Jarboe purchased an office building in Diamond Bar, California (the "Diamond Bar Building") and equipment for use in this building, including furniture, computers, printers, phones, and phone systems. *Id.* at 11. PRMI leased the Diamond Bar Building and the equipment from Mr. Jarboe through a limited liability company (the "LLC"), which Mr. Jarboe set up with his wife. *Id.* PRMI paid market rate rent on a monthly basis to Mr. Jarboe's LLC. *Id.*

In addition to owning the office building and the equipment within, Mr. Jarboe ran his mortgage business using both a local and an "800" telephone number, which he had used before his employment with both PRMI and Cherry Creek. *Id.* at 10. To maintain

---

[2] For the purposes of resolving the Motion [#188], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Mr. Jarboe's Amended Answer and Counterclaims [#72]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

continuity within his business and with his contacts in the mortgage origination industry, Mr. Jarboe continued using these telephone numbers while working for other mortgage origination companies such as PRMI and Cherry Creek. *Id.*

In November 2015, Cherry Creek offered Mr. Jarboe employment as a regional manager for branches in the Los Angeles area. *Id.* at 12. He began working for Cherry Creek in February 2016. *Id.* On his acceptance of Cherry Creek's employment offer, twenty-two of the twenty-five PRMI branches which Mr. Jarboe previously managed became branches of Cherry Creek. *Id.* Mr. Jarboe continued to manage these twenty-two branches while employed by Cherry Creek. *Id.*

Pursuant to his employment contract, Mr. Jarboe was to be paid a base salary plus a guaranteed manager override on a monthly basis. *Id.* The contract also contained provisions that made Mr. Jarboe liable to Cherry Creek for any deficit attributable to the branches Mr. Jarboe managed. *Id.* Further, the contract contained "commitments by Cherry Creek and Mr. Jarboe that each would comply with applicable federal and state laws and regulations." *Id.*

In addition, Cherry Creek assumed PRMI's obligations on the lease of the Diamond Bar Building, owned by Mr. Jarboe, which meant that Cherry Creek was required to pay market rate rent for the office space in the Diamond Bar Building. *Id.* at 13. The parties also agreed that Cherry Creek would make monthly payments for the equipment which Mr. Jarboe owned in the branches that Cherry Creek had acquired from PRMI. *Id.* These payments were in addition to Mr. Jarboe's salary and override. *Id.*

On June 18, 2017, Mr. Jarboe gave notice to Cherry Creek of his resignation. *Id.* at 14. His final day was scheduled to be on June 30, 2017, but Cherry Creek required

Mr. Jarboe to work through approximately July 19, 2017. *Id.* Mr. Jarboe alleges that Cherry Creek did not pay Mr. Jarboe wages that were due to him when his employment ended. *Id.* These wages include three months of his guaranteed manager override and one month of base salary. *Id.* Additionally, Mr. Jarboe alleges that Cherry Creek failed to pay him any amounts for unpaid, accrued paid time off. *Id.*

Cherry Creek initiated this lawsuit on January 19, 2018, in an attempt to recover losses which occurred when the branches under the control of Mr. Jarboe accumulated "net losses." *See Compl.* [#3] ¶¶ 17, 22-24, 28-30, 32-33. Cherry Creek asserts that Mr. Jarboe breached his employment agreement (the "Agreement") by not compensating Cherry Creek for these losses as provided by his employment contract. *Id.* ¶¶ 23-24. Cherry Creek brings claims for breach of contract, breach of fiduciary duty, and unjust enrichment. *Id.* ¶¶ 15-33.

In response, Mr. Jarboe asserted seven counterclaims against Cherry Creek: (1) failure to pay wages; (2) payment of business expenses; (3) declaratory judgment; (4) breach of contract; (5) breach of the implied warranty of good faith and fair dealing; (6) conversion; and (7) unfair competition. *Am. Answer and Counterclaims* [#72] at 17-25. In a Motion to Dismiss [#102], Cherry Creek moved to dismiss all of Mr. Jarboe's counterclaims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Motion* [#102] at 1.

On August 20, 2021, the Court entered an Order [#159] on the Motion to Dismiss [#102] determining, in part, that "the parties' employment agreement mandates application of Colorado law." *Order* [#159] at 17. Accordingly, the Court dismissed with prejudice all of Mr. Jarboe's claims that rested on the application of California law: (1)

Counterclaim 1 for failure to pay wages; (2) Counterclaim 2 for payment of business expenses; (3) portions of Counterclaim 3 for declaratory judgment; (4) portions of Counterclaim 4 for breach of contract; and (5) Counterclaim 7 for unfair competition. *Id.* at 15, 19-20. In the present Motion [#188], filed on January 11, 2022, Mr. Jarboe asks the Court to "reconsider those portions of the Order that hold Colorado labor laws apply simply because of a choice-of-law provision in the parties' agreement." *Motion* [#188] at 4.³

## II. Standard of Review

Federal courts have the discretion to reconsider interlocutory orders at any time prior to entry of judgment. Fed. R. Civ. P. 54(b); *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) ("[C]ourts generally remain free to reconsider their earlier interlocutory orders." (quoting *Been v. O.K. Indus.*, 495 F.3d 1217, 1225 (10th Cir. 2007); citing *Elephant Butte Irrigation Dist. v. U.S. Dep't of Interior*, 538 F.3d 1299, 1306 (10th Cir. 2008))).

However, a motion for reconsideration "is an extreme remedy to be granted in rare circumstances." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995). "[A]s a practical matter, a party seeking reconsideration must set forth facts or law of a strongly convincing nature . . . ." *Wiltberger v. Lee-Ward Partners, LLC*, No. 16-cv-00307-MSK-NYW, 2017 WL 4118446, at *1 (D. Colo. Sept. 18, 2017). It is well established in

---

³ The Court notes that Mr. Jarboe's statement here that "Colorado labor laws apply" misstates the holding of its Order [#159]. *See, e.g.*, Order [#159] at 18. Rather, the Court held there: "Because 'all matters relating' to the employment agreement are governed by Colorado law, the Court finds that California law is inapplicable to the adjudication of these counterclaims." *Id.* In short, stating that the employment agreement is covered by Colorado law and that California labor laws are inapplicable is not identical to saying that Colorado statutory labor laws, specifically, are applicable here and offer protections to Mr. Jarboe.

the Tenth Circuit that grounds for a motion to reconsider are limited to the following exceptions: "(1) an intervening change in the controlling law; (2) new evidence previously unavailable; and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark*, 57 F.3d at 948). The present Motion [#188] is based on the third exception, i.e., the need to correct clear error or prevent manifest injustice. *Motion* [#188] at 6.

### III. Analysis

At the outset, the Court notes that the entirety of Mr. Jarboe's choice-of-law argument in his Response [#103] to the Motion to Dismiss [#102] was as follows:

> The majority of Cherry Creek's motion is based on a false premise: that Colorado law is the only possible choice. Cherry Creek is mistaken for two reasons.
>
> First, . . . Cherry Creek cannot impose its Colorado forum selection and choice of law provisions upon Jarboe – an employee Cherry Creek must admit was based in, resided in and performed his duties in California [*see* ECF No. 1, Exh. 2, Comp. ¶ 2; ECF No. 72, Counterclaim ¶¶ 6, 18]. *See* Cal. Labor Code § 925(a)(1) & (2).
>
> Second, Colorado follows the Restatement (Second) of Conflicts of Laws. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 447, 601 P.2d 1369, 1372 (1979). "Where a conflict of laws question is raised, the objective . . . is to locate the state having the 'most significant relationship' to the particular issue.'" *Id.* The law of the state "having the most significant relationship" is "then applied to resolve the particular issue." *Wood Bros. Homes, Inc.*, 198 Colo. at 447-48, 601 P.2d at 1372. However, "[w]hen performance is illegal in the place of performance, the contract will usually be denied enforcement." *Wood Bros. Homes, Inc.*, 198 Colo. at 449.
>
> Locating the state with "the most significant relationship" in the employment context should be straightforward. Jarboe, a California resident, was employed by Cherry Creek to manage the branches it just acquired with Jarboe, all of which were located in California. As an employee who lived and worked in California in a California office of a Colorado-based company, Jarboe's employment was always subject to California law protections for

-6-

>  employees. Cherry Creek does not (and cannot) submit any authorities that would deprive Jarboe of such protections even in this District. Jarboe's rights are even more clear since the provision upon which Cherry Creek relies to impose Colorado law on its employees is voidable. Cal. Labor Code § 925(a)(1) & (2). Indeed, this Court has recognized the importance that a strong expression of California public policy to invalidate a contractual provision (forum selection clause). *Homewatch Int'l, Inc. v. Pac. Home Care Servs.*, 2011 U.S. Dist. LEXIS 50303 at *6-9 (D. Colo. 2011).
>
>  In sum therefore, California has "the most significant relationship" to this action. Jarboe has the right to exercise his rights under the California Labor Code. Cherry Creek's analysis is mistaken. This Court should deny this motion to dismiss.

*Response* [#103] at 9-10.

Although Mr. Jarboe complains that the Court's Order [#159] on the Motion to Dismiss [#102] "disregarded authorities that make clear that Colorado labor laws . . . cannot apply to workers outside the state" and "disregarded United States Supreme Court authorities that hold extraterritorial application of state laws and regulations to be unconstitutional under the Commerce Clause[,]" these authorities, or even these arguments, were *never provided to the Court* in Mr. Jarboe's Response [#103] to the Motion to Dismiss [#102]. *Motion* [#188] at 2; *see Response* [#103] at 6-10. In the Response [#103], Mr. Jarboe argued why California labor law is applicable in this case without any reference to the arguments and legal authority which he now asserts in the present Motion [#188] that the Court "disregarded" or "ignored." *Motion* [#188] at 2, 7; *see also McCullon v. Parry*, No. 18-cv-00469-NYW, 2021 WL 877718, at *4 (D. Colo. Mar. 9, 2021) ("[A]bsent any contrary authority from the Tenth Circuit or this District, this court is persuaded that it had no obligation to *sua sponte* raise or consider the issue as currently framed.") (emphasis in original). Further, Mr. Jarboe does not attempt to distinguish, and does not even mention most of, the legal authority relied on by the Court

in its Order [#159] on the Motion to Dismiss [#102].  *See generally Motion* [#188]; *Reply* [#190].

A.  **Whether the Motion to Reconsider is Timely or Otherwise Appropriate**

Cherry Creek first argues that because Mr. Jarboe waited almost five months after the Order [#159] to move for reconsideration and make novel arguments, "his delay in doing so is . . . cause to deny his motion."  *Response* [#189] at 9.  The Court disagrees.  "[I]n the absence of Tenth Circuit authority recognizing such a denial [, based on timeliness,] as an appropriate exercise of [the Court's] discretionary authority under Rule 54(b)," the Court will address Mr. Jarboe's substantive arguments.  *See Equal Emp. Opportunity Comm'n v. CollegeAmerica Denver, Inc.*, No. 14-cv-01232-LTB-MJW, 2015 WL 6437863, at *2 (D. Colo. Oct. 23, 2015); *see also McCullon*, 2021 WL 877718, at *10 (granting in part a motion to reconsider two years after an order on a motion to dismiss).  Further, Mr. Jarboe is correct to point out that Cherry Creek would not be prejudiced by the Court reconsidering the Order [#159] because the discovery cutoff was months before the Order [#159] was issued.  *Reply* [#190] at 8.

Accordingly, the Court proceeds to consider if there is a "need to correct clear error or prevent manifest injustice."  *See Servants of Paraclete*, 204 F.3d at 1012.

B.  **Whether There Is Clear Error or Manifest Injustice**

1.  **Clear Error**

a.  **Colorado Law**

Mr. Jarboe argues that, under authorities first cited in the present Motion [#188], "it is a clear error of law to force the application of Colorado law to Jarboe's labor law claims simply because the parties' agreement contained a choice-of-law provision."

*Motion* [#188] at 14.  The Court finds that Mr. Jarboe errs in the application of his cited authorities.

First, Mr. Jarboe cites *Abdulina v. Eberl's Temporary Services*, 79 F. Supp. 3d 1201, 1205-07 (D. Colo. 2015), to show that "Colorado labor laws cannot apply to a California employment even if the parties agreed to a 'broad' choice-of-law provision." *Motion* [#188] at 7, 9.  In *Abdulina*, the defendant and the plaintiff, who did not work or reside in Colorado, entered into an employment contract with a choice-of-law provision stating that the contract "would be interpreted and enforced under Colorado law."  79 F. Supp. 3d at 1206.  As Mr. Jarboe notes, the *Abdulina* court found that the Colorado Wage Claims Act (the "CWCA") applied only to Colorado workers, because "[t]he [CWCA] defines an employer as every person, firm, partnership, association, corporation, . . . *in Colorado*, . . . employing any person *in Colorado* . . . ," and because "the [CWCA] states that issues related to the wages of workers in Colorado have important statewide ramifications for the labor force *in this state*."  *Motion* [#188] at 9; *Abdulina*, 79 F. Supp. 3d at 1205-06 (citing Colo. Rev. Stat. Ann. § 8–4–101(5) (2014); Colo. Rev. Stat. Ann. § 8–6–101(2) (1999)) (emphasis in original; internal quotations omitted).[4]  Therefore, the *Abdulina* court held that a plaintiff who did not work in and was not a resident of Colorado had no standing to raise a claim under the CWCA.  79 F. Supp. 3d at 1206.

Second, Mr. Jarboe cites *Sanchez v. Q'Max Solutions, Inc.*, No. 17-cv-01382-CMA-KLM, 2018 WL 1071133 (D. Colo. Feb. 27, 2018), to argue that a contractual

---

[4]  As Mr. Jarboe notes, the CWCA was amended in 2019 to remove express limitations to workers "in Colorado."  *Motion* [#188] at 9-10 n.3 (citing 2019 Colo. Legis. Serv. Ch. 320 (H.B. 19–1210); 2019 Colo. Legis. Serv. Ch. 182 (H.B. 19–1267)); Colo. Rev. Stat. Ann. § 8–4–101(5) (2020); Colo. Rev. Stat. Ann. § 8–6–101(2) (2020).

choice-of-law provision does not permit out-of-state employees to raise claims under the CWCA. *Motion* [#188] at 8. In *Sanchez*, an out-of-state plaintiff's employment contract included a provision stating that it "shall be construed and interpreted in accordance with the laws of the State of Colorado." 2018 WL 1071133, at *3. The *Sanchez* court found that the choice-of-law provision in question did not give a plaintiff standing to raise noncontractual claims under Colorado labor laws. *Id.* at *4.

Here, the Court notes that, unlike in *Abdulina* or *Sanchez*, Mr. Jarboe's employment contract contained a broad choice-of-law provision stating that "[t]he interpretation and construction of this Agreement *and all matters relating hereto*, shall be governed by the internal laws of the State of Colorado, without regard to principles of conflicts or choice of law." *Order* [#159] at 7 (citing *Agreement* [#65-1] at 12) (emphasis added). Six of the seven counterclaims dismissed in whole or in part by the Order [#159] were found to "clearly relate to" the Agreement. *Id.* at 10 (quotations omitted). Thus, both *Abdulina* and *Sanchez* are distinguishable because both concerned choice-of-law provisions which expressly concerned only the underlying contracts and did not concern "matters relating" to the subject matter of the contract.

Third, Mr. Jarboe cites *Beltran v. InterExchange, Inc.*, No. 14-cv-03074-CMA-CBS, 2018 WL 1948687 (D. Colo. Feb. 2, 2018), to establish that "an out-of-state plaintiff cannot assert claims under the laws of a state where he or she does not live or work." *Motion* [#188] at 10. The *Beltran* plaintiffs raised claims, in part, of fraud and misrepresentation under the laws of states in which the plaintiffs did not work or reside. 2018 WL 1948687, at *11. The *Beltran* court clarified that "a plaintiff does not have standing to allege claims on his own behalf under the laws of states where he has never

lived or resided because he has not suffered an injury under those laws, nor is he protected by those laws." *Id.* (citing *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632-CMA-BNB, 2011 WL 2791331, at *8 (D. Colo. July 14, 2011)).

Each authority cited by Mr. Jarboe, none of which is binding, stands for the proposition that a plaintiff cannot raise claims under Colorado law without sufficient connections to Colorado. However, Mr. Jarboe has not attempted to raise a single counterclaim under Colorado law. *See generally Am. Answer and Counterclaims* [#72]. Rather, the Order [#159] merely held that Mr. Jarboe could not assert counterclaims that were raised under *California* law, given the parties' agreement. Order [#159] at 26. Therefore, despite the authorities cited by Mr. Jarboe, the Court cannot find that it committed a clear error in the Order [#159] by holding that Mr. Jarboe could not raise claims based on California statutory law here in Colorado. *See Allred v. Innova Emergency Med. Assoc., P.C.*, No. 18-cv-03097-DDD-NRN, 2020 WL 3259249, at *6 (D. Colo. June 16, 2020) (entering summary judgment on California labor code causes of action because the related employment agreement had an enforceable Colorado choice-of-law provision)

b. **The Commerce Clause**

Mr. Jarboe further argues that authority from the United States Supreme Court, specifically *Healy v. Beer Institute*, 491 U.S. 324 (1989), barred the Court from applying Colorado law in the Order [#159]. Motion [#188] at 11-12. In *Healy*, the Supreme Court clarified that the "Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." 491 U.S. at 336 (quoting *Edgar v. MITE Corp.*,

457 U.S. 624, 642-43 (1982); citing *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 581-83 (1986)). The Supreme Court held that "a statute that directly controls commerce occurring wholly outside the boundaries of a State . . . is invalid . . . ." *Id.* "The critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State." *Id.* (citing *Brown-Forman*, 476 U.S. at 579).

As with Mr. Jarboe's cited authorities applying Colorado law, *Healy* is distinguishable from the present case. In *Healy*, the United States Supreme Court considered pricing requirements that were unilaterally imposed by a state legislature. *Id.* at 328-29. In contrast, Mr. Jarboe consented to being subject to Colorado law through a broad choice-of-law provision. *Order* [#159] at 7 (citing *Agreement* [#65-1] at 12). Because Mr. Jarboe subjected himself to a broad choice-of-law provision, the Court need not consider whether the relevant Colorado law is invalid. *See Lester v. Gene Express, Inc.*, No. 09-cv-02648-REB-KLM, 2010 WL 3941417, at *3 (D. Colo. Sept. 27, 2010) (finding that a choice-of-law provision required the application of Colorado law even where a plaintiff did not work or live in Colorado); *Sensoria, LLC v. Kaweske*, No. 20-cv-00942-MEH, 2021 WL 103020, at *9 (D. Colo. Jan. 12, 2021) (citing *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 224, n.28 (3d Cir. 2006) (finding that a loan agreement, entered into pursuant to the federal Securities Act and which was to be governed by and interpreted under New York law, barred claims brought pursuant to Pennsylvania's Securities Act and common law)). The Court further notes that the Tenth Circuit Court of Appeals has enforced choice-of-law provisions mandating the application of state laws where the nexus between parties and the state chosen by contractual choice-of-law provisions was far more tenuous than in the present case. *See, e.g., McBride v. Mkt. St.*

*Mortg.*, 381 F. App'x 758, 765 (10th Cir. 2010) (applying Georgia law because "Georgia has a reasonable relationship to the parties and transaction in this case. Market Street's parent corporation, NetBank Inc., is headquartered in Georgia and the Agreement was derived from a form created and used by NetBank.").

Accordingly, the Court finds that it did not commit clear error in the Order [#159].

### 2. Manifest Injustice

The Court must additionally consider whether Mr. Jarboe has been subjected to manifest injustice as a result of the Order [#159]. *See Servants of Paraclete*, 204 F.3d at 1012. Mr. Jarboe argues that the Order [#159] "effectively den[ies] Jarboe the protection of any state's labor law by limiting him to 'Colorado law' that cannot govern his California employment." *Motion* [#188] at 6; *see also id.* at n.2 (arguing that Mr. Jarboe is further precluded from raising affirmative defenses under any state's law). The Court disagrees.

For the purposes of adjudicating the Motion [#188], the Court assumes without deciding that Mr. Jarboe is correct in averring that he is barred from raising statutory claims under Colorado labor law for his employment in California. *See Reply* [#190] at 9. However, as Cherry Creek points out, "[Mr.] Jarboe ignores the vast regime of common and federal laws that govern labor and employment in this country." *Response* [#189] at 8. By way of example only, several federal laws may be applicable to Mr. Jarboe's dismissed claims. *See, e.g.*, 29 U.S.C. § 206 (mandating the payment of minimum wage); 29 C.F.R. § 778.217 (requiring employers to reimburse expenses where an employee is "required to expend sums . . . for the convenience of his employer"); 15 U.S.C. § 45 (prohibiting unfair methods of competition).

Mr. Jarboe was free to bring claims under federal labor law but chose not to do so. *See generally Am. Answer and Counterclaims* [#72]. For example, Mr. Jarboe is not without the protection of labor laws such as the Fair Labor Standards Act (the "FLSA"). *See* 29 U.S.C. § 203(e)(1) ("[T]he term 'employee' means any individual employed by an employer."); *cf. Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 296 (1985) ("The Court has consistently construed the [FLSA] liberally to apply to the furthest reaches consistent with congressional direction") (internal quotations omitted); *Encino Motorcars v. Navarro*, 138 S. Ct. 1134, 1142 (2018) ("Because the FLSA gives no textual indication that its exemptions should be construed narrowly, there is no reason to give [them] anything other than a fair (rather than a narrow) interpretation.") (internal quotations omitted; alteration in original). Federal labor laws may not carry the same protections as California labor laws, but Colorado's choice-of-law doctrine does not guarantee the application of the law most favorable to a plaintiff. *See Haggard v. Spine*, No. 09-cv-721-CMA-KMT, 2009 WL 1655030, at *3 (D. Colo. June 12, 2009) (stating that choice-of-law provisions are enforceable under Colorado law unless the application of the chosen state's law would be contrary to a fundamental policy of a state with a materially greater interest in the issue); *Jacquat v. Hub Int'l Ins. Servs., Inc.*, No. 09-cv-02539-WYD-MJW, 2010 WL 9568710, at *3 (D. Colo. June 15, 2010) (stating that in the absence of a choice-of-law provision, Colorado applies "the most significant relationship" test outlined in Restatement (Second) of Conflict of Laws § 188(2) (citing *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372-73 (Colo. 1979))); *cf. Bowers v. Tension Int'l, Inc.*, No. 15-cv-2734-WJM-KLM, 2016 WL 3181312, at *5 (D. Colo. June 8, 2016) ("No doubt, it would be much easier for [p]laintiff to pursue claims arising from work done

in Colorado here, rather than a court in Missouri. But these are private-interest arguments that the Court . . . does not consider where the parties have a contractual provision designating another forum." (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013))).

No federal employment law is cited in the Motion [#188] or the Reply [#190]. *See generally Motion* [#188]; *Reply* [#190]. As Mr. Jarboe declines to explain why these laws provide insufficient protection, the Court cannot find that its order render him a victim of manifest injustice. Instead, the Court notes that Mr. Jarboe, a sophisticated actor who has "worked in the mortgage industry since 1986," *Am. Answer and Counterclaims* [#72] at 9, enjoyed the protection of California labor laws until he willingly entered into the Agreement, which clearly contained a broad choice-of-law provision applying Colorado law, *see id.* at 2 ("Mr. Jarboe admits that he entered into the . . . employment contract . . . with [Cherry Creek]. Mr. Jarboe further states that the Contract speaks for itself."); *Agreement* [#65-1] at 12.[5]

---

[5] The Court acknowledges that, while Mr. Jarboe does not raise the argument, "Colorado courts will not enforce a contract that violates public policy." *McCracken v. Progressive Direct Ins. Co.*, 896 F.3d 1166, 1172 (10th Cir. 2018) (quoting *Rademacher v. Becker*, 374 P.3d 499, 500 (Colo. App. 2015)); *see generally Motion* [#188]; *Reply* [#190]. However, in the absence of contrary authority, the Court finds no reason why Colorado public policy would be violated by Mr. Jarboe voluntarily waiving his right to California labor law protections. *See, e.g.*, *Cagle v. Mathers Fam. Tr.*, 295 P.3d 460, 464 (Colo. 2013) ("No Colorado supreme court decision has explicitly adopted that forum selection clauses are . . . against public policy."); *Bowers*, 2016 WL 318312, at *5 ("The more relevant public policy here is that 'enforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.' Given such a clause, Plaintiff faces a 'heavy burden' of 'showing . . . that enforcement would be unreasonable and unjust.'" (quoting *Atl. Marine*, 571 U.S. at 63; *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992))) (internal citations omitted; alteration in original); *Viking River Cruises, Inc. v. Moriana*, No. 20-1573, 2022 WL 2135491, at *11 (U.S. June 15, 2022) (holding that the application of California labor law may be waived through arbitration agreements).

For the reasons stated above, Mr. Jarboe has not met his "extraordinary burden of demonstrating clear error" or manifest injustice, and thus, the Court need not reconsider the Order [#159].  *See Gebremedhin v. Am. Fam. Mut. Ins. Co.*, No. 13-cv-02813-CMA-BNB, 2016 WL 7868815, at *2 (D. Colo. Feb. 5, 2016).  Accordingly, the Motion [#188] is **denied**.

### IV.  Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#188] is **DENIED**.

Dated:  July 5, 2022

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge